# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **TASHA S.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 7:21-cv-00413** |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Tasha S. ("Tasha") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f. Tasha argues that the Administrative Law Judge ("ALJ") erred by failing to properly (1) assess her mental impairments and RFC findings, and (2) assess her allegations regarding her symptoms. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 19) and **DENYING** Tasha's Motion for Summary Judgment (Dkt. 17).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Tasha failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted

Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Tasha filed for SSI on January 6, 2019, alleging disability beginning on June 15, 2007, due to hepatitis A and C with enlarged liver, high liver enzymes, right sided pain radiating to lower back, hypothyroidism, severe fatigue, neck pain, migraines and headaches, rectal bleeding, depression, and bipolar disorder. R. 15, 215. The state agency denied Tasha's application at the initial and reconsideration levels of administrative review. R. 84–97, 99–110. The relevant period for Tasha's SSI claim is from her January 6, 2019, application date through the ALJ's decision on November 25, 2020. See 20 C.F.R. § 416.202 (explaining that a claimant is not eligible for SSI until, among other factors, the date he files an application for SSI benefits); 20 C.F.R. § 416.501 (stating that a claimant may not be paid SSI for any period that precedes the first month he satisfies the eligibility requirements, which cannot pre-date the date on which an

---

or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience.  See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

application was filed). On October 8, 2020, ALJ Jeffrey Schueler held a hearing to consider

Tasha's claim. R. 32–55. Counsel represented Tasha at the hearing, which included testimony

from vocational expert Michael DeMark. On November 25, 2020, the ALJ entered his decision

analyzing Tasha's claim under the familiar five-step process[3] and denying her claim for SSI

benefits. R. 15–27.

The ALJ found that Tasha had not engaged in substantial gainful activity since January 6,

2019, the application date.[4] R. 17. The ALJ determined that Tasha suffered from the severe

impairments of anxiety disorder, depressive disorder, borderline personality disorder, panic

disorder without agoraphobia, hepatitis A and C, thyroid disorder, opioid/heroin use disorder in

remission, and obesity. Id. The ALJ determined that these impairments, either individually or in

combination, did not meet or medically equal a listed impairment. R. 18–21. The ALJ found that

regarding her mental impairments, Tasha had moderate limitations in interacting with others,

concentrating, persisting or maintaining pace, and in adapting or managing oneself, and a mild

limitation in understanding, remembering or applying information. R. 19–20.

The ALJ concluded that Tasha retained the RFC to perform light work, except that she

can occasionally be exposed to loud noise and vibration. She should avoid all exposure to

hazards (such as moving machinery or heights) and needs work that does not involve the

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the Claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] Tasha was 39 years old on the application date which is a younger individual under the Act. R. 26.

handling of food or food preparation. She is also limited to work involving simple, routine, repetitive tasks. She requires a work environment free of fast-paced production requirements, i.e. one where others' work is not dependent on her work product, with few if any workplace changes. She can make only simple, work-related decisions, and she can have only occasional interaction with the public, coworkers, or supervisors. R. 21.

The ALJ found that Tasha is unable to perform any past relevant work, however, she could perform other jobs that exist in significant numbers in the national economy, such as marker and router. R. 25–26. Thus, the ALJ determined that Tasha was not disabled. R. 27. Tasha appealed the ALJ's decision, and the Appeals Council denied her request for review on May 20, 2021. R. 1–6.

## ANALYSIS

Tasha alleges that the ALJ failed to properly (1) assess her mental impairments and RFC findings, and (2) assess her subjective allegations regarding her symptoms.

### A. Medical History

1. Treatment History

On December 20, 2018, Tasha visited Afsanah Widner, PA, at New Horizons Healthcare and reported a history of mental health treatment for personality disorder, manic disorder, anxiety, and depression. R. 490. She also reported that she was seeing a grief counselor weekly, had been treated at a methadone clinic for the past year, and that she was awaiting insurance approval to begin hepatis C treatment. Id. Ms. Widner noted that Tasha's physical examination was normal aside from a slightly enlarged liver. R. 492. Ms. Widner found that Tasha had depression, substance abuse disorder, and hepatitis C, and referred Tasha for a behavioral health evaluation and further studies. Id. After her January 2019 appointment with Ms. Widner, Tasha

did not seek significant treatment for her physical impairments and did not complain of gastrointestinal symptoms, fatigue, headaches or other symptoms related to hepatitis. See e.g., R. 487, 2041, 2045.

In January 2019, Tasha visited Jessica Gillispie, PA-C, for medication management regarding her depression and substance abuse. R. 2009–11. Tasha reported to Ms. Gillispie depressive symptoms such as sadness, crying, fatigue, and lack of motivation. R. 2009. Tasha also reported that she quit taking all of her medication and acknowledged that Vistaril, Effexor, and Remeron had been effective to treat her mental impairments in the past. Id. Tasha further reported that she was seeing a counselor which helped her "a lot." Id. Tasha's depression screening showed moderately severe depression, with Tasha reporting difficulty concentrating on things such as reading the newspaper. Id. Ms. Gillispie noted that Tasha's physical examination revealed that she appeared well and in no distress, with good eye contact and hygiene. R. 2010. Ms. Gillispie also noted that Tasha's mental status examination revealed that her mood and affect were sad, but she was alert and oriented, with no signs of paranoia or delusions, and had intact insight, judgment, cognition, and memory. Id. Ms. Gillispie prescribed Tasha the medications Effexor, Vistaril, and Remeron and encouraged her to continue taking methadone daily. Id.

At her February 2019 visit with Ms. Gillispie, Tasha reported major improvement in her depression, sleep, and anxiety since restarting her medication. R. 2007. Tasha attended church and found it helpful to relieve her mental impairments. Id. Ms. Gillispie noted that Tasha's mental status examination revealed the same normal findings as her prior visit, but her mood and affect were now pleasant. R. 2008.

In April 2019, Ms. Gillispie noted that Tasha's depression and anxiety were stable and Tasha reported, "I'm great." R. 2004. Tasha discontinued her Benztrapine medication due to worsening jerking symptoms and nightmares, and Ms. Gillispie prescribed Prazosin. R. 2004–05. Tasha's mental status examination remained normal. R. 2005.

Tasha denied depressive symptoms at her July 18, 2019 visit. R. 2051. She reported that medication was "really helping," and that her nightmares "greatly decreased" since starting Prazosin. Id. Tasha also reported that her depression remained stable, her home life had been good, and she had more good days than bad days. Id. Ms. Gillispie noted that Tasha's mental status remained normal and continued her medication regimen. R. 2052.

In October 2019, Tasha complained of increased anxiety because she had recently ended a romantic relationship, but also reported that she was working at a job. R. 2048. Tasha's mood was sad, but her mental status examination remained normal. R. 2049. Ms. Gillispie continued Tasha's medication with one addition and advised her to return in two months to follow-up on her depression. Id.

Tasha did not seek mental health treatment again until June 22, 2020 when she returned to Ms. Widner for a complete medical examination. R. 2043–46. Tasha denied depressive symptoms and reported that she felt "very stable" on her medication regimen. R. 2043. Ms. Widner noted that Tasha's physical examination was normal and her mental status examination revealed normal orientation, no thought disorder, intact memory, and appropriate affect. R. 2045. Ms. Widner also noted that Tasha was able to "concentrate and stay focused in the encounter." Id. Ms. Widner refilled Tasha's medications at her June and July 2020 visits. R. 2041, 2046.

    2.  <u>Medical Opinion Evidence</u>

On June 13, 2019, state agency psychological consultant Howard S. Leizer, Ph.D., found that Tasha's substance addiction disorder and depressive, bipolar, and related disorders were not severe impairments. R. 91. Dr. Leizer noted that Tasha's mental impairments cause mild limitations in her ability to understand, remember, or apply information and to concentrate, persist, or maintain pace, and no limitation in interacting with others or adapting or managing herself. Id. On reconsideration, state agency psychological consultant Jo McClain, PsyD., reviewed the record and fully agreed with Dr. Leizer's opinion. R. 105. The ALJ found the opinions of Drs. Leizer and McClain not persuasive because they were not consistent with the overall medical evidence or record, which showed that Tasha has the severe mental impairments of anxiety disorder, depressive disorder, borderline personality disorder, opioid/heroin use disorder in remission, and panic disorder without agoraphobia. R. 17, 24.

On June 14, 2019, state agency medical consultant Jack Hutcheson, M.D., found that Tasha's physical impairments were non-severe. R. 90. On reconsideration, Robert McGuffin, M.D. a state agency medical consultant fully agreed with Dr. Hutcheson's opinion. R. 104. The ALJ found the opinions of Drs. Hutcheson, and McGuffin not persuasive because they were not consistent with the overall medical evidence or record, which showed that Tasha has the severe physical impairments of hepatitis A and C, thyroid disorder, and obesity. R. 17, 24.

### B. Mental Impairments

Tasha asserts that the ALJ failed to properly assess her mental impairments as required by SSR 96-8P. Pl.'s Br. at 14–24, Dkt. 18. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Specifically, she argues that the ALJ failed to properly consider her moderate limitations in concentration, persistence and pace, interacting with coworkers, supervisors, and the public, and adapting or managing herself, and

failed to explain how his RFC findings addressed or accommodated these moderate limitations. Id. at 17. Tasha also argues that the ALJ only addressed the skill level of work and did not address her ability to sustain work activity over the course of an eight-hour workday. Id. at 21.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarified that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). The decision in Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to

include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations."  Id. (quoting  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

This is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence, and pace without further analysis. Unlike the claimant in Mascio, the medical evidence here supports the ALJ's conclusion that, despite her moderate limitations in concentration, persistence, or pace, interacting with others, and adapting or managing herself, Tasha is capable of performing the mental demands work with certain limitations. R. 21. Specifically, the ALJ explained why Tasha's mental impairments did not translate into restrictions in the RFC beyond a limitation to work involving simple, routine, repetitive tasks, no fast-paced production requirements with few if any workplace changes, simple, work-related decisions, and occasional interaction with the public, coworkers, or supervisors. Id.

As a preliminary matter, contrary to Tasha's argument, the ALJ adequately accounted for Tasha's moderate impairments in his hypothetical questions to the vocational expert ("VE") and the RFC finding in his ruling. The ALJ asked the VE to consider a hypothetical individual of the claimant's age, education, and work history "who is limited to light level work. . . needs work

limited to simple, routine, repetitive tasks, in a work environment free of fast-paced production

requirements. Fast-paced I'll define as where others' work is not dependent on this individual's

work product. The work should also involve simple, work-related decisions, few if any,

workplace changes, and only occasional interaction with the public, coworkers, or supervisors."

R. 50–51. Substantial evidence supports the ALJ's development of Tasha's RFC. The ALJ is not

required to pose hypothetical questions to the VE relating to impairments not supported by the

record. See Fisher v. Barnhart, 181 Fed. App'x 359, 364 (4th Cir. 2006) (citing Johnson v.

Barnhart, 434 F.3d 650, 659 (4th Cir. 2005)) ("[A] hypothetical question is unimpeachable if it

'adequately reflect[s]' a residual functional capacity for which the ALJ had sufficient

evidence."); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (stating vocational expert's

opinion must be in response to hypothetical questions that "fairly set out all of claimant's

impairments").

       The ALJ acknowledged Tasha's testimony that due to her mental impairments she has

anxiety, difficulty being around others, isolates herself, nightmares, crying spells, and wants to

sleep all day. R. 19, 22, 47. Nevertheless, the ALJ noted that Tasha's allegations were not

entirely consistent with the medical evidence of record, which showed that Tasha interacted

normally with all treating practitioners. R. 19. The ALJ also noted that the evidence showed that

Tasha was pleasant, cooperative, and in no distress. Id. Further, the ALJ noted that Tasha's

treating practitioners did not observe her to have deficiencies in eye contact, speech or

conversation, that Tasha reported good relationships with her grandfather and son, and lived with

her family without serious problems. Id. After a thorough review of the Tasha's mental health

records and treatments, the ALJ concluded that Tasha had a moderate limitation in interacting

with others and accommodated this in the RFC finding by limiting her to occasional interaction with others in the workplace. Id.

The ALJ also found that Tasha's moderate limitation in adapting or managing herself is accommodated with a restriction to simple, work-related decisions and work in an environment with few workplace changes. R. 20. The ALJ explained that the medical evidence of record showed that Tasha did not usually complain about serious problems with adaptation and managing herself. Id. The ALJ noted that Tasha's treatment notes showed no deficiencies in hygiene and that she wore appropriate attire. Id. The ALJ also noted that there is no evidence that Tasha had problems being aware of normal hazards and taking appropriate precautions. Id. Further, the ALJ noted that Tasha was able to handle the mental demands of parenting, had no problems with independently making plans and setting goals, and handled her own activities of daily living without significant assistance from others. Id. The ALJ acknowledged that Tasha testified that her 80-year-old grandfather helped her with chores, but the ALJ concluded that this assistance was due to Tasha's alleged physical problems, not mental limitations. Id.

Regarding her moderate limitation in concentration, persistence, or pace, the ALJ acknowledged Tasha's hearing testimony that she has memory problems, difficulty maintaining concentration and completing tasks. R. 22, 47. However, the ALJ explained that the medical evidence in the record shows that Tasha did not complain to treating practitioners of difficulty maintaining concentration, persistence, and pace. R. 22. The ALJ also explained that treating practitioners did not observe that she was distractible or slow, and Ms. Widner specifically noted Tasha had adequate concentration and focus throughout the June 2020 appointment. R. 22, 2045. The ALJ noted that Tasha reported adequate symptom control from her psychiatric medications. Id. The ALJ also noted that Tasha reported watching TV for pleasure, which the ALJ found

11

requires some concentration and persistence. Id. Further, the ALJ noted that "because the claimant reported some difficulty concentrating and completing work when trying to multitask, she has a moderate limitation to concentration, but there is no evidence of problems with persistence or pace." Id. Thus, the ALJ concluded that the record supported no more than a moderate limitation in concentration, persistence, or pace and accommodated Tasha's concentration difficulties in the RFC by limiting her to simple, routine work with no fast-paced production requirements meaning she cannot perform work at a pace where other people's work product does not depend on Tasha completing her work product in a certain time. Id.

Tasha also asserts that the ALJ failed to address her ability to sustain work over an eight-hour workday, and that the RFC addresses only skill level and not an ability to stay on task. The ALJ stated at step three that "this area also considers an individual's ability to sustain an ordinary routine and regular attendance at work, as well as the ability to work a full day without needing more than the allotted number or length of rest periods customarily provided." R. 20. The ALJ explained that despite Tasha's complaints of concentration problems and difficulty completing work while multitasking, the evidence in the record reflects that there is no evidence of problems with persistence or pace. Id. Thus, the ALJ considered and explained his conclusion that Tasha could sustain work for an eight-hour day and is only limited to simple, routine work with no past-faced production requirements. Id.

Accordingly, substantial evidence supports the ALJ's conclusions regarding Tasha's RFC determination. The ALJ properly detailed Tasha's medical history during the relevant period (R. 22–23), discussed the medical opinion evidence (R. 24), and assessed her symptoms related to her impairments (R. 19–20, 22, 25). As such, this court is not "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637.

### C. Subjective Allegations

Tasha asserts that the ALJ's assessment of her allegations is not supported by substantial evidence. Pl.'s Br. at 24–28, Dkt. 18. As discussed above, the ALJ did not ignore the objective evidence in the record related to her mental impairments. Tasha did not identify specific instances where the ALJ ignored evidence or improperly applied the legal standards. Rather, Tasha asks this court to re-evaluate her subjective allegations and come to a different conclusion from that of the ALJ. That is not the province of this court.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). At this step, objective evidence is not required to find the claimant disabled. Thus, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions.  See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984).  Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases

where the determination is unclear, unreasonable, contradicts other findings of fact, or is based

on an inadequate reason or no reason at all.  See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx.

65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Contrary to Tasha's argument, the ALJ's opinion includes a detailed discussion of

Tasha's medical history, including her allegations, and the ALJ adequately supported his

findings that Tasha's allegations were not entirely consistent with the medical and other evidence

in the record. R. 24. The ALJ acknowledged Tasha's allegations that she can stand one to two

hours at a time before needing to lie down due to liver pain, must lie down five times a day,

needs assistance with chores, and has poor concentration. R. 22. The ALJ considered Tasha's

testimony relating to her liver pain and fatigue, migraines, nightmares from her PTSD, dislike to

be around crowds, tendency to isolate, daily crying spells for no specific reason, and her

difficulty sustaining concentration, persistence, or pace. R. 25. The ALJ assessed Tasha's daily

living activities such as chores and parenting, and concluded that Tasha handled her own

activities without significant assistance of others. R. 20. The ALJ noted the objective medical

evidence in the record that Tasha did not report frequent crying spells once she began taking

medication for her mental impairments; that after October 2019 she went months without mental

health treatment; that she reported few symptoms at her mental health appointments; and she did

not complain of significant functional limitations at medical visits. R. 25. For example, the ALJ

noted that Tasha did not report her need to lie down or gastrointestinal symptoms to her

practitioner. Id. The ALJ also explained that Tasha did not consistently complain of or seek

treatment for symptoms related to her physical impairments such as hepatitis C, headaches, and

thyroid disorder. Id.

Further, the ALJ noted that the objective medical evidence, including diagnostic imaging, testing, and physical examination results reflect mild or no abnormalities. Id. Moreover, Tasha's treatment notes showed that her mental status was normal at appointments, including normal insight, judgment, concentration, memory, mood, and affect at appointments except for her first appointment after being off medication for a month where she had a sad mood and affect. Id. Thus, the ALJ considered Tasha's subjective complaints and stated that Tasha "has the above residual functional capacity assessment, which is supported by the medical evidence of record as cited above, including mostly normal physical and mental status examinations and only occasional routine treatment." Id.

Though Tasha disagrees with the ALJ's analysis and conclusions, she does not identify any material conflicting evidence that the ALJ failed to consider or any material misstatement of the evidence of record. Rather, Tasha simply asks the Court to reweigh the evidence and reach a different conclusion than the ALJ. It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work.  See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Tasha's subjective complaints with substantial evidence.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** entering an order **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING**

Tasha's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered:  August 4, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge